Stephen Taylor (*phv*)
Lemberg Law LLC
43 Danbury Road
Wilton, CT 06897
Telephone:  (203) 653-2250
Facsimile:  (203) 653-3424
E-mail: staylor@lemberglaw.com

Trinette G. Kent, Esq. (Bar No. 025180)
Of Counsel in Arizona and California
Lemberg Law LLC
10645 North Tatum Blvd.
Suite 200-192
Phoenix, AZ 85028
Telephone:   855-301-2100 ext. 5533
Facsimile:  203-653-3424
E-mail: tkent@lemberglaw.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tee Foster, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Aaron's, Inc. ; and DOES 1-10, inclusive,<br>Defendants. | CASE NO.: 2:15-cv-01637-SRB<br><br><br>**PLAINTIFF'S RESPONSIVE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

1

Plaintiff Tee Foster ("Plaintiff"), through counsel, hereby opposes Defendant Aaron's, Inc.'s ("Aaron's" or "Defendant"), Motion to Compel Arbitration and Stay Proceedings. (Doc. No. 26).

## INTRODUCTION

Plaintiff and Defendant never entered a contract of any sort.  Aaron's cannot enforce an arbitration agreement that never existed.

Even if Plaintiff had entered the arbitration agreement, it plainly would not cover Plaintiff's claims here.  The unsigned agreement put forth by Aaron's covers only "disputes arising out of or relating in any way to [the consumer's] agreement(s) with Aspen Way Enterprises, Inc. d/b/a Aaron's . . . ." (Doc. No. 26-1 p. 12). Defendant puts forth no agreement Plaintiff allegedly entered with Aspen.  Moreover, Plaintiff sues for automated calls he received as a reference for someone else's Aaron's account.[1]  Plaintiff received these calls entirely independent from and not "relating in any way to" his relationship with Aaron's.  Accordingly, even if there was a contract (there was not), it did not cover Plaintiff's claim here, and the Court should not compel arbitration.

## RESTATEMENT OF FACTS

Plaintiff is an adult individual residing in Tempe, Arizona. (Doc. No. 1 ("Complaint") ¶ 9).  Aaron's is a Georgia business entity with a principal office located in Atlanta, Georgia. (Doc. No. 1 ¶ 10; Doc. No. 11 ("Answer") ¶ 11).  Plaintiff sues Aaron's individually and on behalf of a class of consumers under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), for automated calls placed by Aaron's without Plaintiff and the putative class's prior express consent.

---

[1] *See* Doc. No. 1 ("Complaint") ¶ 16 ("The calls were placed by Defendant in an attempt to collect a debt or recover rented property from an acquaintance of Plaintiff, Ms. Smith."); Doc. No. 11 ("Answer") ¶ 16 ("Aaron's is without knowledge or information sufficient to form a belief as to the allegations . . . .").

(Complaint ¶ 23 (defining the class)).

In and around July, 2015, Aaron's repeatedly placed calls using prerecorded messages and an ATDS to Plaintiff's cellular telephone number, 864-xxx-3454. (Complaint ¶¶ 14-15).  When Plaintiff answered Aaron's calls, he heard a prerecorded message asking Plaintiff to please hold for the next available Aaron's representative. (Complaint ¶ 18).

On Aaron's calls, Aaron's representatives indicated that they were calling Plaintiff regarding his acquaintance Ms. Smith's Aaron's account. (Complaint ¶ 16). Plaintiff is not an Aaron's customer, has no ongoing business with Aaron's (Complaint ¶ 19), therefore Aaron's had no legitimate reason to call his cellular telephone.  On the calls with Aaron's, "Plaintiff repeatedly asked that the calls to his number stop.  The calls did not stop." (Complaint ¶ 20).

According to Aaron's, on June 8, 2015, Plaintiff entered Aaron's Store C1659 in Tempe, Arizona; spoke to two Aaron's employees; filled out and signed a "Lease Agreement" and "Mandatory Arbitration Agreement"; and left the store without any Aaron's merchandise in hand. (Doc. No. 26 ("Motion") at 3:3-22).   According to Aaron's, "[s]hortly thereafter," Aaron's determined that it did not have a correct social security number for Plaintiff.  Aaron's called Plaintiff to notify him of the issue and to bring his social security card into the store.  Plaintiff never did so.  Accordingly, Plaintiff never received any merchandise from Aaron's, and Aaron's disposed of the documents Plaintiff allegedly signed. (Motion at 3:17-22).

Aaron's makes no claim that it or any representative signed any agreement with Plaintiff.  Aaron's makes no claim that either party received any consideration from the other.

Plaintiff alleges he was called regarding not his business with Aaron's, but on

the account of his acquaintance Ms. Smith.[2]   The unsigned and unfilled Lease Order Form Aaron's puts forth contains a section titled "Personal References" and asks for name, address, <u>phone number</u> and relationship. (Doc. No. 26-1 p. 7).   Plaintiff presumes he was listed as a reference on Ms. Smith's application and was called for that reason.

## ARGUMENT

## I.   PLAINTIFF DID NOT ENTER ANY CONTRACT WITH DEFENDANT AND IS NOT BOUND BY ANY ARBITRATION AGREEMENT

The facts put forth by Aaron's establish that no contract was entered between Aaron's and Plaintiff, thus Plaintiff cannot be bound to arbitrate.   The rules concerning enforcement of arbitration provisions are simply rules of contractual construction. Indeed, although the Federal Arbitration Act (the "FAA") reflects a federal policy favoring arbitration, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S. Ct. 3346 (1985), the Act "does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties'] agreement.'" *Volt Info. Scis., Inc. v. Board of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S. Ct. 1248 (1989) (quoting 9 U.S.C. § 4).   "The right to compel arbitration derives from a contractual right, and one who is not a party to a contract has no standing to compel arbitration." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990); *Lorber Indus. v. Los Angeles Printworks Corp.,* 803 F.2d 523 (9th Cir. 1986). Accordingly, the FAA requires "a <u>transaction</u> involving commerce" to apply. 9 U.S.C. § 2 (emphasis added).

---

[2] Defendant's recounting falls in line—it says it never leased Plaintiff any merchandise and discarded his application shortly after Plaintiff's June 8, 2015 store visit. (*See* Motion at 3:17-22).   Thus it had no reason to call Plaintiff thereafter.

4

Defendant does not satisfy that Plaintiff entered **any** contract.  Under Arizona law,[3] "[f]or an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *K–Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App.1983) (citing *Savoca Masonry Co., Inc. v. Homes & Son Constr. Co., Inc.*, 542 P.2d 817 (Ariz. 1975)).  An offer is a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (quoting Restatement (2d) of Contracts, § 24).  "The offer creates the power of acceptance permitting the offeree, by accepting the offer to transform the offer as promised into a contractual obligation." *Id.* An acceptance is a "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Id.* (quoting Restatement (2d) of Contracts, § 50).

Plainly, Defendant does not allege offer and acceptance or consideration here, never mind establish them.  Aaron's claims only that Plaintiff visited its store, signed his name on two documents, left empty-handed, and was denied rental of its merchandise once Aaron's determined it had an incorrect social security number for Plaintiff. (Motion at 3:3-22).  Aaron's does not claim that it signed either document, both of which provide a line for, but lack, its representative's signature. (Doc. No. 26-1 pp. 9-10, 12).  Aaron's says it later must have discarded the documents signed by Plaintiff, at its discretion, because it no longer possesses those signed documents.

---

3 "[O]rdinary state-law principals that govern the formation of contracts" determine whether parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995).  Plaintiff is an Arizona resident, Defendant purports Plaintiff entered a contract while in Arizona, and Defendant assumes Arizona law applies (*see* Motion at 16:2-7).  Plaintiff agrees. *See Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1211 n.2 (9th Cir. 2001) (citing Restatement (2d) of Conflict of Laws, § 188(2) (1971), listing five factors for determining applicable law).

5

(Motion at 3:21-22).  The clear upshot is that no business relationship existed moving forward, or ever. At most, Defendant alleges that Plaintiff made an offer by filling out an application. *See, e.g.*, *Acacia Mut. Life Ass'n v. Berry*, 94 P.2d 770, 773-74 (Ariz. 1939) (contract for life insurance executed only upon application and first monthly payment being accepted); *see also Paczosa v. Cartwright Elementary School Dist. No. 83*, 213 P.3d 222, 227 (Ariz. 2009) (finding retirements benefit application did not function as offer and acceptance).  Clearly Defendant did not accept that offer at any time—it did not lease any merchandise to Plaintiff, it sent Plaintiff no final contract, and indeed it discarded Plaintiff's application altogether.

Moreover, even if Defendant *had* accepted Plaintiff's offer in construct, it provided no consideration to Plaintiff.  While a promise for a promise constitutes adequate consideration, *K-Line*, 677 P.2d at 1320, here Aaron's clearly promised Plaintiff nothing—it reviewed his application, asked Plaintiff to provide his social security card and, when that was not done, discarded his application.  Through the lens of the FAA, Plaintiff and Defendant entered no commercial "transaction" of any sort, thus Plaintiff's claim for Defendant's unlawful automated calls is bound to arbitration by nothing. *See* 9 U.S.C. § 2.

Additionally, even if Defendant could establish a contract, it fails to show it is the entity with standing to compel arbitration.  Here, Defendant says Plaintiff signed "Aaron's Mandatory Arbitration Agreement." (Motion at 9:4-18; Doc. No. 26-1 p. 12).  That agreement provides that it is between the consumer and "Aspen Way Enterprises, Inc."  Plaintiff sues Aaron's, Inc., the Georgia corporation which placed automated calls to his cell phone, not Aspen Way Enterprises, Inc.  Defendant makes no argument how an agreement between Plaintiff and Aspen Way Enterprises, Inc. would allow it to

6

compel Plaintiff to arbitrate his claims for Aaron's, Inc.'s unlawful automated calls.[4] Federal policy favoring arbitration cannot compel arbitration on its own, and here Defendant utterly fails to establish its standing (assuming any contract exists). *See Britton*, 916 F.2d at 1413; *Lorber Indus.*, 803 F.2d at 525.

Because there was no contract between Plaintiff and Aaron's or Aspen Way, Plaintiff cannot be compelled to arbitrate his claims.

## II.   THE CONTRACT DEFENDANT PURPORTS WAS ENTERED WOULD NOT COVER PLAINTIFF'S CLAIMS

Even if the Court finds that the Plaintiff did enter a contract and that Defendant has standing to compel arbitration, the plain language of the 'Mandatory Arbitration Agreement' does not cover Plaintiff's TCPA claims.  Again, the FAA "confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties'] agreement.'" *Volt*, 489 U.S. at 474 (quoting 9 U.S.C. § 4); *see E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 122 S. Ct. 754 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement.").

Here, the 'Mandatory Arbitration Agreement' states:

---

[4] The "Mandatory Arbitration Agreement" does not state that it applies to Aspen Way's affiliates or agents (*see* Doc. No. 26-1 p. 12), nor does Defendant make any argument that it qualifies as such, *see Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) ("[A]gents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents . . . and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause . . . ." (citing *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185 (9th Cir. 1986), and *Britton*, 916 F. 2d at 1413)); *see, e.g.*, *Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1356 (S.D. Fla. 2011) (denying motion to compel TCPA claim where movant not party to contract and, "The Court cannot conclude the parties clearly intended to benefit Global when executing the Agreement and the accompanying arbitration clause").

YOU AND WE AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF OR RELATING IN ANY WAY TO YOUR AGREEMENTS(S) WITH ASPEN WAY ENTERPRISES, INC. D/B/A AARON'S ("Aaron's" or "we"), THE PRODUCTS OR SERVICES PROVIDED TO YOU BY AARON'S, OR THE AMOUNTS PAID OR OWED BY YOU TO AARON'S ("Disputes") SHALL BE RESOLVED EXCLUSIVELY IN BINDING ARBITRATION RATHER THAN LITIGATION IN COURT.

(Doc. No. 26-1 p. 12).  For multiple reasons, this language does not cover Plaintiff's TCPA claims.

First, while the Mandatory Arbitration Agreement applies to disputes relating to agreements with Aspen Way, Defendant does not put forth any additional contract Plaintiff allegedly entered with Aspen Way.  The 'Lease Agreement' Defendant claims Plaintiff signed states is purportedly between the consumer and Defendant here, Aaron's, Inc., not Aspen Way.  Thus if both contracts were entered, the Mandatory Arbitration Agreement plainly would not cover issues arising out of the Lease Agreement.

Second, Plaintiff's TCPA claims do not arise out of his own personal business with Aaron's or Aspen Way.  As alleged by Plaintiff and supported by Defendant's Motion, Defendant was not calling Plaintiff regarding his own Aaron's account. Defendant was calling Plaintiff regarding Plaintiff's acquaintance Ms. Smith's account. (Complaint ¶ 16; Motion at 3:17-22 (Defendant stating it never leased Plaintiff any merchandise and discarded his application shortly after Plaintiff's June 8, 2015 store visit)).  Had Plaintiff never been rejected by Aaron's on June 8, 2015, he would still have been auto-dialed on Ms. Smith's account, and would still have his TCPA claim. *See Stevens-Bratton v. TruGreen, Inc.*, 2016 WL 155087, at *6 (W.D. Tenn. Jan. 12, 2016) ("'[W]hen trying to determine if a dispute falls within an arbitration clause, [a] proper method of analysis . . . is to ask if an action could be

maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement.'" (quoting *Whaley v. T-Mobile, USA, Inc.*, 2013 WL 5155342 (E.D. Ky. Sept. 12, 2013))).  Thus Plaintiff's TCPA claims in no way arise out of his personal contacts with Aaron's or Aspen Way, and by its terms the Arbitration Agreement does not cover Plaintiff's claim. *See, e.g.*, *In re Jiffy Lube Intern., Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012) ("Though it seems likely that [plaintiff] provided his telephone number when signing the contract, it is unclear that later use of that number to commit a tort [a TCPA violation] can be said to relate to the contract . . . ."); *see also Wagner v. Discover Bank*, 2014 WL 128372, at *5 (D. Colo. Jan. 13, 2014) (finding defendant's automated collection calls on plaintiff's account not related to plaintiff's account sufficient to compel arbitration)

In *Jiffy Lube*, the plaintiffs allegedly signed arbitration agreements in connection with receiving oil changes, and defendant obtained the plaintiffs' telephone numbers from the oil change invoices.  The defendant provided those numbers to a telemarketing company which allegedly auto-dialed the plaintiffs, not regarding the oil changes they had received, but with text messages offering the plaintiffs' membership into a discount club.  The court found that the oil change arbitration agreement was not sufficiently related to the defendant's promotional text messages to allow the TCPA claims to be bound to arbitration, noting that arbitration agreements must have limiting clauses to prevent "absurd results." *Id.* at 1262-63.  The connection is even more strained—actually passed the breaking point—here, where Defendant's automated calls to Plaintiff stem from Ms. Smith's Aaron's account, not Plaintiff's June 8, 2015 interaction with Aaron's.  Accordingly this dispute is not bound by the Arbitration Agreement.

Defendant argues that Plaintiff's claims must be arbitrated because his "TCPA

claims relate to an agreement in which the plaintiff provided consent to receive the calls at issue." (Motion at 15:1-14 (citing *Stevens-Bratton*, 2016 WL 155087, *and Whaley*, 2013 WL 5155342)).[5]   The principle of *Stevens-Bratton* and *Whaley* are inapposite to Defendant's arguments and the facts distinguishable.  In both cases, the courts recognized that a claim which can be brought without reference to the contract or relationship providing for arbitration falls outside the scope of the arbitration agreement. *Stevens-Bratton*, 2016 WL 155087, at *6; *Whaley*, 2013 WL 5155342, at *3.   Here, Plaintiff's claim relates exclusively to Ms. Smith's Aaron's account.   To whatever extent Defendant anticipates a prior express consent defense,[6] that defense will be based on the Lease Agreement or the 'Lease Order Form' where Plaintiff allegedly provided his number, not the separate Arbitration Agreement. (*See* Motion at 15:15-17 ("Plaintiff's TCPA claims cannot be resolved without referring to the <u>Lease Order Form or Lease Agreement</u> to determine whether Aaron's, in fact, had consent to place the calls at issue.")).   Accordingly, Defendant need not reference the Arbitration Agreement to raise any defense, and per *Stevens-Bratton* and *Whaley*, cited by

---

[5] Prior express consent is an affirmative defense under the TCPA for which a defendant bears the burden of proof. *Olney v. Job.com, Inc.*, 2014 WL 174764, at *3 (E.D. Cal. May 1, 2014); *Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012).

[6] Plaintiff disputes that his provision of his number regarding his prospective lease with Defendant equates to prior express consent for Defendant to autodial Plaintiff for any reason, here Ms. Smith's account. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (stating in regards to TCPA that "[e]xpress consent is 'consent that is clearly and unmistakably stated'"); *see also Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) ("The FCC has established no general rule that if a consumer gives his cellular phone number to a business, she has in effect given permission to be called at that number for any reason at all, absent instructions to the contrary.  Rather, to the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes.").

Defendant, Plaintiff's claims should not be arbitrated.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration and Stay Proceedings.

DATED:  March 10, 2016                    By: /s/ *Stephen Taylor*
                                          Stephen Taylor (*phv*)
                                          Lemberg Law LLC
                                          43 Danbury Road
                                          Wilton, CT 06897
                                          Telephone:  (203) 653-2250
                                          Facsimile:  (203) 653-3424
                                          E-mail: staylor@lemberglaw.com

1

## CERTIFICATE OF SERVICE

2

3    **THIS IS TO CERTIFY** that on March 10, 2016, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of filing to all counsel of record.

4

5

6                                          _/s/   Stephen Taylor_____
                                              Stephen Taylor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27