| | |
|---|---|
| David B. Rosenbaum, 009819 | Kristine McAlister Brown |
| Hayleigh S. Crawford, 032326 | (admitted *pro hac vice*) |
| OSBORN MALEDON, P.A. | Derin B. Dickerson |
| 2929 North Central Avenue, 21st Floor | (admitted *pro hac vice*) |
| Phoenix, Arizona 85012-2793 | ALSTON & BIRD LLP |
| (602) 640-9000 | 1201 West Peachtree Street |
| (602) 640-9050 Fax | Atlanta, Georgia 30309-3424 |
| drosenbaum@omlaw.com | (404) 881-7000 |
| hcrawford@omlaw.com | (404) 881-7777 Fax |
| | kristy.brown@alston.com |
| | derin.dickerson@alston.com |

*Attorneys for Defendant Aaron's, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tee Foster, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br>v.<br>Aaron's, Inc.,<br>Defendant. | CASE NO.: 2:15-cv-01637-SRB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>**(Oral Argument Requested)** |

# INTRODUCTION

Plaintiff Tee Foster ("Plaintiff") offers no valid reason this Court should deny Defendant Aaron's, Inc. ("Aaron's") Motion to Compel Arbitration and Stay Proceedings. Plaintiff makes two arguments as to why the Court should relieve him of the contractual obligation to arbitrate that he willingly undertook. But neither has merit.

- Plaintiff argues that he never entered into a contract with Aaron's. But this argument completely ignores Aaron's evidence, which establishes that Plaintiff necessarily entered into multiple contracts with Aaron's, including the Lease Agreement and the Mandatory Arbitration Agreement, both of which are valid, enforceable contracts. The fact Aaron's later terminated Plaintiff's Lease Agreement does not affect the enforceability of the Mandatory Arbitration Agreement in any way.
- Plaintiff argues that even if he entered into a contract with Aaron's, his claims fall outside the scope of his Mandatory Arbitration Agreement. Plaintiff is wrong. His Mandatory Arbitration Agreement applies to any disputes that arise out of or relate to the Parties' agreements. Plaintiff's TCPA claim arises out of or relates to his Lease Order Form and Lease Agreement. These agreements contain consent provisions that give Aaron's permission to contact Plaintiff. Accordingly, his TCPA claim cannot be resolved without reference to his agreements, and his TCPA claim necessarily arises out of or relates to the agreements.

Plaintiff offers no evidence to rebut Aaron's evidence that the Parties entered a valid agreement that requires Plaintiff to arbitrate, rather than litigate in court, the claims he asserts here. For these reasons, and for the reasons set forth more fully below, this Court should grant Aaron's Motion to Compel Arbitration and Stay Proceedings.

## ARGUMENTS AND AUTHORITIES

### I. The Evidence Clearly Establishes That Plaintiff Entered Into A Contract With Aaron's That Requires Him To Arbitrate His Claims.

Plaintiff does not dispute that he signed a Lease Order Form and Lease Agreement. Instead, Plaintiff argues that the agreements he signed were not enforceable based on the allegations that: (i) Aaron's did not accept Plaintiff's offer to lease merchandise; (ii) there was insufficient consideration supporting the agreement; and (iii) Aaron's is not a party to the agreement. Dkt. No. 30 at 5–6. The record evidence, however, directly controverts each of Plaintiff's arguments.

*First*, Plaintiff's argument that Aaron's did not sign or accept Plaintiff's Lease Agreement and Mandatory Arbitration Agreement is foreclosed by Aaron's evidence. In contending that "Aaron's does not claim that it signed" the Lease Agreement and the Mandatory Arbitration Agreement, Plaintiff ignores the Declarations of the Aaron's employees who assisted Plaintiff when he visited the Aaron's store on June 8, 2015. *See* Dkt. No. 30 at 3. In her Declaration, Aaron's employee Ileanna Salvatierra states that she met with Plaintiff and that "it was Aaron's standard practice and procedure that the General Manager or Customer Account Manager . . . sign the two contracts." Salvatierra Decl. (Dkt. No. 26-1, Ex. B) at ¶ 4. Similarly, Mr. Simental's Declaration states that "it is Aaron's standard practice and procedure that the General Manager or Customer Account Manager meets with the potential customer *to review and sign the contracts required to enter into a lease.*" Simental Decl. (Dkt. No. 26-1, Ex. A) at ¶ 3 (emphasis added). Mr. Simental's Declaration further states that he was the Customer Account Manager on duty the day Plaintiff came into the store and that he would have followed the standard pattern and practice. *Id.* at ¶¶ 4, 6. This unrebutted testimony of Aaron's standard practices and procedures is precisely the type of evidence that courts consistently rely upon to establish similar facts. *See, e.g., Cuadras v. MetroPCS Wireless, Inc.*, No. CV 09–7897, 2011 WL 11077125, at *5 (C.D. Cal. Aug. 8, 2011) (granting motion to compel arbitration despite fact that

3

defendant had "not produced any signed agreement" in light of "the testimony of one of [the defendant's] employees that it is a 'standard business practice' to provide customers with the T & Cs when they activate service"). Aaron's has sufficiently demonstrated that it accepted Plaintiff's offer and entered into contracts with Plaintiff when both parties signed the Lease Agreement and Mandatory Arbitration Agreement.

Plaintiff relies on two cases to support his argument that Aaron's did not accept Plaintiff's offer, but they do not help Plaintiff's cause. *See Acacia Mut. Life Ass'n v. Berry*, 94 P.2d 770 (Ariz. 1939); *Paczosa v. Cartwright Elementary Sch. Dist. No. 83*, 213 P.3d 222 (Ariz. Ct. App. 2009). Plaintiff cites *Acacia Mutual* as holding that a valid contract is not formed until payment is accepted. Dkt. No. 30 at 6. In that case, however, the express terms of the insurance application at issue provided that the application did not constitute an agreement, and that the agreement "shall not take effect until this application has been approved by the Association, and the first payment required thereon . . . ." *Acacia Mutual*, 94 P.2d at 771. There are no such provisions in the contracts at issue here. Moreover, Arizona law is clear that mutual promises are sufficient consideration to create a contract even when the promise is simply to submit an application for services. *See Rutherford v. John O'Lexey's Boat & Yacht Ins., Ltd.*, 576 P.2d 1380, 1382 (Ariz. Ct. App. 1978) ("[Because] Rutherford was told that temporary insurance was effective provided that he submit a completed application on Monday, we conclude that a contract was created subject to a condition subsequent . . . . His promise to complete the application and pay the premium for permanent insurance was sufficient consideration to support this contract.").

The decision in *Paczosa* likewise misses the mark. There, the court addressed the issue of whether an application for retirement benefits constituted an employment contract. *Paczosa*, 213 P.3d at 226–27. The court concluded that the benefits application was not an employment contract because the application did not include

4

critical terms such as salary or duties, was not specific to the two plaintiffs, and expressly stated that it was an application rather than an agreement. *Id.* In contrast, all of Aaron's Lease Agreements include detailed terms that specifically relate to the customer, including his or her contact information, the specific merchandise to be leased, the length of the lease, and the frequency of payments and amount due in each payment. *See* Dkt. No. 26-1, Ex. A, Tab 2. Here, Aaron's evidence shows that Plaintiff's Lease Agreement included Plaintiff's telephone number and address, as well as information relating to Plaintiff's agreement to pay $229.46 each month for 24 months for the specific merchandise he leased. *Id.* at Tab 4. Moreover, unlike the application in *Paczosa,* the Lease Agreement is called an "agreement" throughout the document. *Id.* at Tab 2. When Mr. Simental and Plaintiff signed it, promises were exchanged, and a contract was formed. When Aaron's discovered that Plaintiff had failed to provide his true Social Security Number, Aaron's terminated the contract, which terminated the parties' obligation to perform. Simental Decl. (Dkt. No. 26-1, Ex. A) at ¶ 7. It did not, however, relieve the parties of their obligation to arbitrate. Mandatory Arbitration Agreement (Dkt. No. 31, Substitute Ex. A, Tab 3) at ¶ d ("This Arbitration Agreement survives the termination of your Agreement with Aaron's . . . ."); *see also Saleemi v. Gosh Enters., Inc.*, 467 Fed. App'x 744 (9th Cir. 2012) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991)) (applying a "presumption that dispute resolution provisions survive termination of a contract").

***Second,*** it is indisputable that there was consideration supporting the Lease Agreement and Mandatory Arbitration Agreement. As Plaintiff acknowledges, Arizona law is clear that mutual promises are sufficient to form a contract. Indeed, "in this state monetary consideration is not always required as consideration. Adequate consideration consists of a benefit to the promisor and a detriment to the promisee. Clearly a promise for a promise constitutes adequate consideration." *Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. 1986); *see also Palmer v. Kelly*, 79 P.2d 344, 346 (Ariz. 1938) ("It has always been held that mutual promises are sufficient

5

consideration for a contract."). Ignoring the clear language of the Lease Agreement, Plaintiff contends that "Aaron's clearly promised Plaintiff nothing." Dkt. No. 30 at 6. To the contrary, according to the terms of the Lease Agreement, Aaron's promised to lease to Plaintiff specific property for a particular term in exchange for Plaintiff's promise to pay a specified rate for the term of the lease. Likewise, in the Mandatory Arbitration Agreement, Plaintiff and Aaron's mutually promised to arbitrate their disputes. These are precisely the type of exchange of promises that suffice as adequate consideration. *See* A.R.S. § 44–121 ("Every contract in writing imports a consideration.").

***Third***, Plaintiff's argument that Aaron's was not a party to the Mandatory Arbitration Agreement is simply wrong. As Aaron's Notice of Substitute Exhibit makes clear, Aaron's is a party to the Mandatory Arbitration Agreement with Plaintiff. *See* Dkt. No. 31. The confusion created by Aaron's previously submitted exhibit, which references Aspen Way (an Aaron's franchisee) instead of Aaron's, was simply the result of a clerical error that resulted in the filing of an exhibit that did not match the Mandatory Arbitration Agreement quoted by Aaron's in its Motion to Compel Arbitration. *See* Dkt. No. 26 at 4 (quoting the correct contract). The Mandatory Arbitration Agreement, by its express terms, is between Plaintiff and Aaron's (not Aspen Way). *See* Dkt. No. 31, Substitute Ex. A, Tab 3. There can be no serious dispute that Aaron's is a party to the Mandatory Arbitration Agreement, and the Parties formed a valid, enforceable agreement to arbitrate Plaintiff's claims.

**II.     The Scope Of The Mandatory Arbitration Agreement Covers Plaintiff's Claims.**

Plaintiff's argument that "the plain language of the 'Mandatory Arbitration Agreement' does not cover Plaintiff's TCPA claims" must fail. *See* Dkt. No. 30 at 7. The scope of the Mandatory Arbitration Agreement is unquestionably broad, covering "any and all disputes arising out of or relating in any way to [Plaintiff's] agreement(s) with Aaron's, Inc." *See* Dkt. No. 31, Substitute Ex. A, Tab 3 at ¶ a; *see also PPG*

6

*Indus., Inc. v. Pilkington PLC*, 825 F. Supp. 1465, 1478 (D. Ariz. 1993) (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)) ("The phrase 'arising out of or relating to' has been construed as creating a broad arbitration clause."); *see also BioD, LLC v. Amnio Tech., LLC*, No. 2:13-cv-1670, 2014 WL 268575, at *4 (D. Ariz. Jan. 24, 2014) (same). Plaintiff's "agreement with Aaron's" encompasses both the Lease Order Form and the Lease Agreement, each of which contains a provision expressly giving Aaron's consent to contact Plaintiff. Because Aaron's "prior express consent" defense arises directly out of these consent clauses, the question of whether Aaron's had Plaintiff's consent to place the calls at issue in this lawsuit necessarily relates to the Lease Order Form and Lease Agreement. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability").

Plaintiff also argues that his TCPA claims are outside the scope of his Mandatory Arbitration Agreement because they do not arise out of his own personal business with Aaron's. Dkt. No. 30 at 8–10. In other words, Plaintiff asks the Court to decide whether the consent provisions in his Lease Order Form and Lease Agreement will ultimately be found broad enough to provide consent for the calls at issue here. In making this argument, Plaintiff asks the Court to impermissibly evaluate the merits of Plaintiff's claims and Aaron's defenses. The Court's role, however, "is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *See Rep. of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991); *Whaley v. T-Mobile, USA, Inc.*, No. 13-31, 2013 WL 5155342, at *3 (E.D. Ky. Sept. 12, 2013) (in considering a motion to compel arbitration in a TCPA case, "the Court's duty is not to determine whether [the defendant's] defense is meritorious"). The only question before the Court is arbitrability, and courts routinely grant motions to compel arbitration in TCPA cases when, as here, the defendant's stated defense is based on a

contractual consent clause. *See, e.g.*, *Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-cv-2472, 2016 WL 155087, at *6 (W.D. Tenn. Jan. 11, 2016) (compelling arbitration where the plaintiff's TCPA claims "cannot be resolved without referring to" the agreement because it was "necessary to examine the agreement to resolve [the defendant's] affirmative defense of consent"); *Whaley*, 2013 WL 5155342, at *3 (compelling arbitration when the "action cannot be properly maintained without reference to the contract at issue because, among other reasons, [the defendant] relies upon a clause of the agreement as its defense to plaintiff's claim").

Plaintiff relies on two cases to argue that his claims are not within the scope of his Mandatory Arbitration Agreement, but neither case involved a contract containing a consent provision. *See In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012); *Wagner v. Discover Bank,* No. 12-cv-02786, 2014 WL 128372 (D. Colo. Jan. 13, 2014). In fact, neither case involved a defense arising out of a contractual provision at all. For example, the defendant in *Jiffy Lube* argued that it had consent to call the plaintiffs because the plaintiffs had provided their telephone numbers during previous oil change visits to Defendant. *In re Jiffy Lube*, 847 F. Supp. 2d at 1258. But here, Aaron's consent defense is not based on the fact that Plaintiff provided his contact information to Aaron's. To the contrary, the facts to support Aaron's affirmative defense arise directly out of the express consent terms of the Lease Order Form and Lease Agreement. No such clause existed in *Jiffy Lube* or *Wagner*.

Because the consent clauses in the Lease Agreement and Lease Order Form are the crux of the question of arbitrability of Plaintiff's claims, neither of the cases Plaintiff relies on has any bearing on the enforceability of the Mandatory Arbitration Agreement. The Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. Accordingly, to the extent that this Court has any doubts about Aaron's Motion to Compel Arbitration, those "doubts

8

concerning the scope of arbitratable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## CONCLUSION

For the foregoing reasons and for the reasons stated in Aaron's Motion to Compel Arbitration and Stay Proceedings, Aaron's respectfully requests that this Court grant its motion to compel arbitration and stay this action.

Dated this 21st day of March, 2016.

OSBORN MALEDON, P.A.

By: s/ Hayleigh S. Crawford
    David B. Rosenbaum, 009819
    Hayleigh S. Crawford, 032326
    2929 North Central Avenue
    21st Floor
    Phoenix, Arizona 85012-2793

    ALSTON & BIRD LLP
    Kristine McAlister Brown (admitted *pro hac vice*)
    Derin Dickerson (admitted *pro hac vice*)
    1201 West Peachtree Street
    Atlanta, Georgia 30309-3424

*Attorneys for Defendant Aaron's, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

s/ Dawn M. Dybdahl